## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

FRANKLIN C. SMITH,         )
                              )
      **Plaintiff,**           )
                              )
**v.**                            )        **Case No. CIV-14-1374-HE**
                              )
**RAE HOWELL, et al.,**        )
                              )
      **Defendants.**       )

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. United States District Judge Joe Heaton referred this matter to the undersigned magistrate judge for preliminary review, conducting any necessary hearings, including evidentiary hearings, the entry of appropriate orders as to non-dispositive matters, and the preparation and submission of proposed findings and recommendations as to dispositive matters referenced in 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is recommended that this action be summarily **DISMISSED.**

### I. BACKGROUND

At the time Plaintiff filed this lawsuit, he was confined in the Payne County Jail in Stillwater, Oklahoma. (ECF No. 1:1). He named five Defendants: Rae Howell, a nurse at Stillwater Medical Center; Lloyd Moore, a physician at Stillwater Medical Center; Michael Casteel, a police officer for the Stillwater Police Department; Lynn Hermanson, Payne County Assistant District Attorney; and, Judge Kathy Thomas, Payne County District Court Judge. (ECF No. 1:1-3).

In his Complaint, Plaintiff states that he was found mentally disabled on May 12, 2013 by the United States Social Security Administration. (ECF No. 1:2, 4). He alleges that on October 20, 2014 he voluntarily went to the Stillwater Medical Center *via* ambulance to obtain mental health treatment. (ECF No. 1:4). Plaintiff contends that prior to being transported to Stillwater Medical Center, he had been wrongfully prescribed the "neuroleptic drug," Haldol. (ECF No. 1:4). At some point after arriving at Stillwater Medical Center, Plaintiff was arrested by Defendant Casteel. (ECF No. 1:3-5).

Plaintiff submitted the Probable Cause Affidavit supporting his arrest with his Complaint and does not appear to dispute the events that occurred at Stillwater Medical Center prior to his arrest. Instead, Plaintiff contends that rather than being arrested, his behavior should have prompted mental health treatment only. (ECF No. 1:2, 4, 5).

According to the Probable Cause Affidavit, Defendant Howell reported to Defendant Casteel that Plaintiff had arrived seeking mental treatment and that he became unruly. (ECF No. 1-2:1). Defendant Howell also reported that they had to leave the door to his room open to allow for observation because Plaintiff kept pulling at his IV, taking off his blood pressure cuff, pulling at the cords connected to nearby monitors and trying to get out of bed. (ECF No. 1-2:1). Defendant Howell explained that she had walked away from the area for a moment and upon returning, found Plaintiff seated on his bed with his pants down around his knees. Defendant Howell observed through the open door that Plaintiff was masturbating. (ECF No. 1-2:1). She also explained there was a child in the room across the hall but fortunately, the child's door was closed and no-one else had walked by his room. (ECF No. 1-2:1).

When Defendant Casteel made contact with Plaintiff, he was overwhelmed by the smell of alcohol coming from Plaintiff and noted slurred speech and watery eyes. (ECF No. 1-2:1). Defendant Casteel noted that Plaintiff was "rambling on about multiple different things [including] that he was in New Orleans when it blew up" and "that he knew it was going to happen before it did." (ECF No. 1-2:1). Defendant Casteel further noted that Plaintiff was conscious and aware of where he was and what was happening around him. (ECF No. 1-2:1). Defendant Casteel reported that upon being released, he placed Plaintiff under arrest for Indecent Exposure and Public Intoxication. (ECF No. 1-2:1-2).[1]

By way of his Complaint, Plaintiff contends that while he was at Stillwater Medical Center, he was treated by Defendant Nurse Howell but alleges that she "failed to conduct a proper inquiry." (ECF No. 1:4). Plaintiff asserts similar allegations against Defendant Moore, stating that Defendant Moore neglected to treat his mental health problems and "accused Plaintiff of using the medical system to get help." (ECF No. 1:2, 4). Plaintiff states that Defendant Moore "authorized Plaintiff's arrest" by "calling the police and having the Plaintiff arrested" and was "mentioned at Plaintiff's Preliminary Hearing as a witness working in the state's capacity." (ECF No. 1:2, 4).

---

[1] The publicly available docket sheet related to Plaintiff's arrest and subsequent charges indicates that on October 20, 2014, he was initially charged with Indecent Exposure (a felony) and Public Intoxication (a misdemeanor). The docket sheet further indicates that after a preliminary hearing held on December 4, 2014, Plaintiff entered a plea of no contest on April 14, 2015, to a misdemeanor count of Outraging Public Decency, *see* Okla. Stat. tit. 21, § 22, and the State dismissed the Public Intoxication charge. OSCN, Case No. CF-2014-645, District Court of Payne County.

According to Plaintiff, Defendant Casteel never invoked his Fifth Amendment rights and "made deliberate false statements of a material fact by altering the 'Probable Cause Affidavit.'" (ECF No. 1:3-4). Plaintiff contends Defendant Hermanson, prosecuting his criminal case, knew Plaintiff's "Fifth amendment [rights were not] invoked by Officer Casteel while Plaintiff was on a 'Neuroleptic Drug' (Haldol)." (ECF No. 1:3). Plaintiff alleges that Judge Thomas took an "unusual interest towards Plaintiff and his case" and allowed Defendant Hermanson to maliciously prosecute him. (ECF No. 1:3). Finally, Plaintiff also complains about Nurse Howell's role as a witness stating that she "acted on the prosecutor, [Defendant Hermanson's], behalf at Plaintiff's preliminary hearing." (ECF No. 1:1).

Construing Plaintiff's Complaint liberally, *see Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007), it appears he is asserting the following claims against each corresponding Defendant:

(1) Defendant Casteel – Fourth Amendment claims of false arrest and/or false imprisonment, pursuant to 42 U.S.C. § 1983, based upon Plaintiff's allegations that Defendant Casteel failed to "invoke Plaintiff's Fifth Amendment rights" and that he discriminated against him based on his age. Additionally, Plaintiff asserts a claim under the Americans with Disabilities Act ("ADA") based upon his allegations that Defendant Casteel discriminated against Plaintiff based on his mental disabilities;

(2) Defendants Nurse Howell and Dr. Moore – Eighth Amendment claims, pursuant to 42 U.S.C. § 1983, based upon deliberate indifference to his medical needs,

4

as well as claims under the ADA and state law claims of medical malpractice and negligence;

(3) Defendant Hermanson – Fourteenth Amendment claim, pursuant to 42 U.S.C. § 1983, based upon malicious prosecution by prosecuting when his Fifth Amendment rights were not invoked by Defendant Casteel, as well as claims under the ADA; and,

(4) Defendant Thomas – Fourteenth Amendment claim, pursuant to 42 U.S.C. § 1983, based upon allegations that she "took an unusual interest in his case" and allowed Defendant Hermanson to maliciously prosecute the charges against him, as well as claims under the ADA.

Plaintiff contends that each Defendant's actions were motivated by discriminatory animus in violation of his constitutional rights and the ADA. Specifically, he states that Defendant Moore is an African-American physician and therefore, his actions were the result of Plaintiff's mental disabilities and his "Irish/American" heritage and "white" race. (ECF No. 1:2, 4). He alleges that Defendant Casteel is younger than he and the Officer's actions were due to Plaintiff's age and mental disabilities. (ECF No. 1:2). Finally, Plaintiff states that Defendants Hermanson, Howell and Thomas "come from an exclusive group of women who like women more than they like men who have a history of violating men" and discriminated against him based on his gender, mental disabilities and age. (ECF No. 1:2).

## II. SCREENING

The Court is required to evaluate the sufficiency of any complaint brought by a prisoner (1) with respect to prison conditions; (2) seeking redress against a

governmental entity, officer, or employee; or (3) who is proceeding *in forma pauperis.*
*See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. §§ 1915A(a), 1915(e)(2)(B). Specifically, the
Court is required to dismiss a complaint or any portion of a complaint that is frivolous or
malicious, fails to state a claim upon which relief may be granted, or seeks monetary
relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c)(l); 28
U.S.C. §§ 1915(e)(2)(B), 1915A(b). The standard of review for such screening is the
same as that applied when considering a motion to dismiss for failure to state a claim.
*Kay,* 500 F.3d at 1218.

## III. FEDERAL CLAIMS

### A. Defendant Casteel

Plaintiff repeatedly claims that Defendant Casteel arrested him without "invoking
his Fifth Amendment rights," presumably meaning that Defendant Casteel failed to read
Plaintiff's *Miranda* rights. (ECF No. 1:3, 4).[2] However, the law in the Tenth Circuit is
clear that the only remedy available for a *Miranda* violation is the suppression of any
incriminating evidence. *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976); accord

---

[2] Plaintiff also makes a conclusory statement in his Complaint that Defendant Casteel made
"deliberate false statements of a material fact by altering the "Probable Cause Affidavit" in order
to avoid a federal lawsuit. (ECF No. 1:3). However, Plaintiff fails to specify the allegedly false
statements or alteration. Though he submitted a copy of the Probable Cause Affidavit with his
Complaint, he simply noted one statement therein with which he disagreed. Specifically, the
Affidavit indicates he was "released" from the hospital and Plaintiff contends he was "arrested"
rather than released. (ECF No. 1-2). Additionally, he contends the description in the Affidavit of
his nonsensical rambling proves that he was mentally unstable on the night of his arrest. (ECF
No. 1-2). There is nothing in the Complaint nor in Plaintiff's notations on the Affidavit indicating
Defendant Casteel's allegedly false statement or alteration of the Affidavit. Thus, to the extent
Plaintiff intended this allegation to support a cause of action, it should be dismissed for failure
to state a claim upon which relief can be granted.

6

*Neighbour v. Covert*, 68 F.3d 1508, 1510-1511 (2nd Cir. 1995). Specifically, the Tenth

Circuit explained:

> The Constitution and laws of the United States do not guarantee [the plaintiff] the right to *Miranda* warnings. They only guarantee him the right to be free from self-incrimination. The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act. *Hampton v. Gilmore*, 60 F.R.D. 71 (E.D.Mo. 1973), *aff'd* 486 F.2d 1407 (8th Cir. 1973).

*Bennett*, 545 F.2d at 1263. *See also Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d

1157, 1165 n.6 (10th Cir. 2003) ("Moreover, violations of *Miranda* rights do not subject

police officers to liability under § 1983."). Accordingly, Plaintiff may not recover

damages on this claim and it should be dismissed with prejudice for failure to state a

claim upon which relief can be granted.

Additionally, Plaintiff's ADA claim as asserted against Defendant Casteel is also

without merit. Title II of the ADA provides that "no qualified individual with a disability

shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to

discrimination by such entity." 42 U.S.C. § 12132. In order to prove a violation of Title

II of the ADA, a plaintiff must demonstrate that: (1) he or she is a qualified individual

with a disability; (2) that he or she was either excluded from participation or denied the

benefits of some public entity's services, programs, or activities, or was otherwise

discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

In *Gohier*, the Tenth Circuit held that a person with a disability *may* state a claim under the ADA based upon police conduct in an arrest or investigation. *Id.* at 1220–21. The Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts: the wrongful arrest theory and the reasonable accommodation during arrest theory. Under the wrongful arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct. *Id.* (citing *Lewis v. Truitt*, 960 F.Supp. 175, 178 (S.D. Ind. 1997) and *Jackson v. Town of Sanford*, Civ. No. 94–12–P– H, 1994 WL 589617, at *6 (D. Me. Sept. 23, 1994)). Under the reasonable accommodation during arrest theory, law enforcement may be liable if they fail to reasonably accommodate a person with a disability during the course of an investigation or arrest for a crime unrelated to that disability, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* (citing *Gorman v. Bartch*, 152 F.3d 907, 912–13 (8th Cir. 1998)). However, while the Tenth Circuit clarified that "a broad rule categorically excluding arrests from the scope of Title II ... is not the law," the court stated that it remained "an open question in this circuit whether to adopt either or both [theories]." *Id.* at 1221.

In *Gohier*, the defendant officer responded to a request to investigate a disturbance involving a man using a baseball bat or pipe to damage vehicles. *Id.* at

1217. The officer subsequently encountered a man, later identified as a paranoid schizophrenic, walking down the middle of the road clutching his right hand to his chest. *Id.* The officer identified himself, and directed the man to "stop," at which time the man put his right hand behind his back and began walking toward the officer at a "fast pace." *Id.* at 1217–18. The officer drew his pistol and ordered the man to show his hands several times, but the man did not comply and kept advancing toward the officer with his right hand hidden. *Id.* at 1218. The man then raised his right hand from behind his back and began repeatedly swinging it down and forward in a stabbing motion, holding a long slender object. *Id.* The officer retreated behind his car and ordered the man to drop the object, but the man did not comply and continued to advance to the driver's side of the patrol car and began to open the door. *Id.* When the officer moved to stop the man, he let go of the door and either stepped or lunged toward the officer making a stabbing motion with the object. *Id.* The officer shot the man twice, killing him. *Id.*

The Tenth Circuit determined that the wrongful arrest theory did not apply because the officer did not misperceive lawful conduct caused by the man's disability as criminal activity. *Id.* at 1221. Under the wrongful arrest theory, law enforcement may be liable for arresting a disabled individual *who has not committed a crime* where law enforcement misperceive the effects of the individual's disability as illegal conduct. *Id.* at 1221. The police officers in the cases cited in the *Gohier* decision each misperceived the effects of a disability as illegal conduct. "In *Lewis*, [officers] beat and arrested, for the offense of resisting law enforcement, a deaf man who could not understand their

9

command; in *Jackson*, [officers] arrested for drunk driving a man who was sober, and whose unsteadiness and slurred speech resulted from a past stroke." *See id.* (citing *Lewis*, 960 F.Supp. at 176–77; *Jackson*, 1994 WL 589617, at *1).

The present case is distinguishable from the cases discussed in *Gohier* because here Defendant Casteel did not misperceive lawful conduct caused by Plaintiff's disability as criminal activity and then arrest him for that conduct. Instead, it is undisputed that Defendant Casteel was called to Stillwater Medical Center to investigate acts of indecent exposure by Plaintiff. (ECF No. 1:4; ECF No. 1-2). Even assuming Plaintiff's conduct was the result of a disability, his conduct warranted a police response because his conduct was unlawful. See also *J.H. ex rel. J.P. v. Bernalillo County*, No. CIV 12–0128 JB/LAM, 2014 WL 3421037, at *50 (D.N.M. July 8, 2014) (rejecting an ADA claim based on a wrongful arrest theory noting, "Even assuming she battered her teacher as a result of her disability, J.P.'s conduct warranted a police response because her conduct was unlawful."); *Buben v. City of Lone Tree*, No. 08–cv–00127–WYD–MEH, 2010 WL 3894185, at *9-11 (D. Colo. Sept. 30, 2010) (granting summary judgment against the plaintiff's ADA claim based on a wrongful arrest theory finding, "Even assuming Plaintiff's conduct was the result of a disability, his conduct warranted a police response because his conduct was unlawful.") For many of the same reasons the Tenth Circuit in *Gohier* rejected application of the wrongful arrest theory therein, the undersigned finds that theory also inapplicable to the facts of this case as set forth in Plaintiff's Complaint and attachments. Thus, even if the wrongful arrest theory were applicable in this Circuit, which remains undecided, such a claim is not cognizable in this

case, as currently pleaded, and therefore, Plaintiff's ADA claim should be dismissed. However, because there is a possibility, albeit slight, that Plaintiff may be able to cure the defects in this claim, it is recommended that the dismissal of Plaintiff's ADA claim against Defendant Casteel be with leave to amend. In proposing dismissal with leave to amend, Plaintiff is hereby reminded of his obligations under Rule 11 of the Federal Rules of Civil Procedure.

### B. Defendants Howell and Moore

Plaintiff has asserted claims under 42 U.S.C. § 1983 against Defendants Howell and Moore alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. However, "the only proper defendants in a § 1983 claim are those who represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. "Neil Young Freedom Concert*," 49 F.3d 1442, 1447 (10th Cir. 1995), (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)) (internal quotation omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations and citations omitted). Purely private acts are not considered acts under color of state law unless that conduct is furthered by actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (noting that a court must determine

whether a private party's "conduct has sufficiently received the imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment").

To support his contention that Defendant Howell acted under color of state law, Plaintiff states that she "participated in his arrest" and testified at his preliminary hearing on behalf of the prosecution. (ECF No. 1:1). Similarly, with regard to Defendant Moore, Plaintiff points to the fact that Defendant Moore called the police to have Plaintiff arrested and was mentioned as a possible witness at his preliminary hearing. (ECF No. 1:2, 4). These allegations are insufficient to establish that either of these Defendants were acting under color of state law for purposes of § 1983 liability.

"A private individual does not engage in state action simply by availing herself of a state procedure." *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000). Likewise, an individual does not act under color of law merely by reporting an alleged crime to police officers who take action thereon. *See Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law."); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("We know of no case in which the report of a state crime is action under color of state law under § 1983); *Taylor v. Nichols*, 558 F.2d 561, 564 (10th Cir. 1977) ("The acts of filing a claim and testifying at trial do not constitute state action. These are private acts.").

> Congress did not, in using the term "under the color of state law," intend to subject private citizens, acting as private citizens, to a federal lawsuit whenever they seek to initiate a

> prosecution or seek a remedy involving the judicial system. To hold otherwise would significantly disregard one purpose of the state action requirement, which is to "preserve[ ] an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936, 102 S.Ct. 2744, 73 L.Ed.2d 482. Instead, in enacting § 1983, Congress intended to provide a federal cause of action primarily when the actions of private individuals are undertaken with state authority. *See id*. at 934, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482. Thus, absent more, causing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action.

*How v. City of Baxter Springs*, 217 F. App'x 787, 793 (10th Cir. 2007). The Tenth Circuit further explained in *How* that while "the goal of successfully prosecuting the accused" is "the same common goal shared between a private citizen and a prosecutor whenever a private citizen presses criminal charges" against the accused, "that common goal is insufficient for a private citizen ... to be considered a state actor." *Id.* at 796.

It is clear that neither Defendant Moore nor Defendant Howell can be considered state actors for purposes of § 1983. Thus, Plaintiff's § 1983 claims against each of them should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Likewise, Plaintiff's claims against each of these Defendants under the ADA should also be dismissed. Plaintiff complains that they did not provide proper treatment in light of his mental disabilities, however, the Tenth Circuit has held that the ADA does not provide remedies for alleged medical negligence or malpractice. *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (holding that the ADA did not provide a remedy because the plaintiff's alleged disability was the reason he was

seeking treatment), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)). *See also Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) ("the failure to provide medical treatment to a disabled prisoner … does not constitute an ADA violation" (citations omitted)); *Callahan v. Sw. Med. Ctr. of Lawton*, 178 F. App'x 837, 839–40 (10th Cir. 2006) (stating that claims relating to medical treatment "are not cognizable under the ADA" (citation omitted)). Thus, this claim as asserted against Defendants Howell and Moore should also be dismissed with prejudice.

### C. Defendant Hermanson

Plaintiff asserts claims against Defendant Hermanson claiming that she maliciously prosecuted him, discriminated against him based on his gender, ran the investigation against him and prosecuted him knowing that his Fifth Amendment rights had not been invoked. (ECF No. 1:2, 3). However, prosecutorial immunity bars § 1983 claims based on a prosecutor's conduct in preparation for and during trial.

> State prosecutors are entitled to absolute immunity against suits brought pursuant to § 1983 for activities "intimately associated with the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). Such activities include "initiating and pursuing criminal prosecutions." *Gagan v. Norton*, 35 F.3d 1473, 1475 (10th Cir. 1994) (citations omitted).

> "The question of immunity turns on 'the nature of the function performed.'" *Myers v. Koopman*, 462 F. App'x 823, 825 (10th Cir. 2012) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). "'[A] prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case.'" *Klen v. City of Loveland*, 661 F.3d 498, 518 (10th Cir. 2011) (quoting *Mink v. Suthers*, 482 F.3d 1244, 1261–62 (10th Cir. 2007)).

> "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluations of evidence, their determinations of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of County Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).

*Douglas v. Miller*, 864 F. Supp. 2d 1205, 1214 (W.D. Okla. 2012). *See also Guttman v. Khalsa*, 446 F.3d 1027, 1035 (10th Cir. 2006) (applying absolute immunity to ADA claim as asserted against prosecutor).

Plaintiff's allegations against Defendant Hermanson are related solely to her actions in investigating and prosecuting his case. (ECF No. 1:2, 3). Thus, she is entitled to absolute immunity and Plaintiff's claims against Defendant Hermanson should be dismissed with prejudice.

### D. Defendant Judge Thomas

Plaintiff also asserts claims under § 1983, as well as a claim under the ADA, against Defendant Thomas, the judge presiding over his criminal case. He contends she showed an unusual interest in his case, allowed Defendant Hermanson to maliciously prosecute him and, in residing over his trial, discriminated against him based on his gender, age and mental disabilities. (ECF No. 1:2, 3). However, a state judge has absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his

authority...."); *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994). The determination as to whether a judge performed a "judicial" act or acted "in the clear absence of all jurisdiction" is made by looking to "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362.

Plaintiff's claims against Defendant Thomas must be dismissed under the doctrine of absolute judicial immunity:

> [O]ur cases make clear that [judicial] immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity.... Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Mireles v. Waco,* 502 U.S. 9, 11–12 (1991) (citations omitted). *See also Fay v. U.S. Dist. Ct. CO Div.*, No. 13–cv–03115-BNB, 2013 WL 6096149, at *2 (D. Colo. Nov. 20, 2013) (applying judicial immunity to the plaintiff's ADA claim, including requests for both money damages and injunctive relief, and noting, "no federal statute needs specifically to exclude judges in order for a judge to be entitled to judicial immunity." (citing *Stump*, 435 U.S. 356–57 and *15 Corps., Inc. v. Denver Prosecutor's Office*, No. 13–cv–00251–WJM–MJW, 2013 WL 5781161, at *5 (D. Colo. Oct. 25, 2013)); *Malipurathu v. Jones*, No. CIV–11–646–W, 2012 WL 3823544, at *7 (W.D. Okla. June 22, 2012) (applying judicial immunity to claims arising under § 1983 and the ADA). Plaintiff's allegations do not support an inference that Defendant Thomas was acting outside her judicial capacity, nor do they support an inference that Defendant Thompson was acting

"in complete absence of all jurisdiction." Accordingly, Plaintiff's federal claims against Defendant Thomas should be dismissed with prejudice based on the doctrine of absolute judicial immunity.

## IV.  STATE LAW CLAIMS

To the extent Plaintiff intended to assert state law claims based on medical malpractice and/or negligence, *see* ECF No. 1:1, 2, it is recommended that the Court decline to exercise supplemental jurisdiction over any such pendent state claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all claims over which it had original jurisdiction); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (affirming the district court's decision to decline supplemental jurisdiction against the plaintiff's state law claims after it dismissed all federal claims); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## V.  MISCELLANEOUS MATTERS

On February 20, 2015, Plaintiff filed a pleading entitled "Amended Complaint Invoking Court Upon Imminent Danger". (ECF No. 15). The claims he attempts to assert therein are based on conditions of confinement at Payne County Jail, completely separate and apart from those claims asserted in his original Complaint and naming entirely new parties as Defendants.

Fed. R. Civ. P. 15(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party." Although Rule 15 mandates that leave to amend is to be "freely given when justice so requires," *Forman v. Davis*, 371 U.S. 178, 812 (1962), in the context of litigation initiated by a prisoner in federal court, proposed amendments to the complaint must also be viewed in light of the restrictions imposed by 28 U.S.C. § 1915 as amended by the Prison Litigation Reform Act ("PLRA") in 1996. The PLRA restrictions include, but are not limited to, full payment of the filing fee in any civil action or appeal submitted by a prisoner through partial payments over time as authorized by statute, *see* 28 U.S.C. § 1915(b)(1) and (2), and a "three strike" provision which prevents a prisoner from proceeding *in forma pauperis* if the prisoner's litigation in federal court includes three or more cases dismissed as frivolous, malicious, or as stating no claim for relief. *See* 28 U.S.C. § 1915(g).

Further, the Federal Rules of Civil Procedure discourage a complaint alleging multiple unrelated claims against multiple parties except in limited circumstances. Fed. R. Civ. P. 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

In other words, a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question. While joinder is encouraged

for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.,* 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (internal citation omitted). Where there is misjoinder of parties, the Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party. See Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

Additionally, Fed. R. Civ. P. 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party." Under "the controlling principle" in Fed. R. Civ. P. 18(a), "[u]nrelated claims against different defendants belong in different suits." *Id.* (quoting *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007)). Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass that this [a multiple claim, multiple defendant] suit produced . . ." *Id.*

With these principles in mind, the undersigned concludes that Plaintiff's Amended Complaint violates Fed. R. Civ. P. 20(a)(2) because it adds new defendants not shown to be connected to his initial claims by a common occurrence or question of fact or law. The undersigned also concludes that the Amended Complaint violates Fed. R. Civ. P. 18(a) because it adds claims not related to those already raised herein. To permit Plaintiff to proceed in this single action on unrelated claims against different Defendants

that should be litigated in separate action(s) would allow him to avoid paying the filing fees required for separate actions, and could also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be a "strike" under 28 U.S.C. § 1915(g). Thus, the undersigned recommends that Plaintiff's Amended Complaint (ECF No. 15) should be stricken as violative of Fed. R. Civ. P. 18 and 20.

Additionally, Plaintiff has also filed a Motion to Compel Service and Notice of Change of Address (ECF No. 33) and Defendant Casteel has filed a Motion for Order (ECF No. 36). In light of the dispositive recommendations herein, the undersigned recommends denying each of these motions as moot.

## VI. RECOMMENDATION

In light of the foregoing discussion, it is hereby recommended that the claims asserted herein, with the exception of Plaintiff's ADA claim against Defendant Casteel, be **DISMISSED with prejudice,** pursuant to 28 U.S.C. § 1915, for failure to state a claim upon which relief can be granted. With regard to Plaintiff's ADA claim against Defendant Casteel, the undersigned recommends that claim be **DISMISSED with leave to amend** within twenty (20) days of any order adopting this Report and Recommendation. It is further recommended that Plaintiff's Amended Complaint Invoking Court Upon Imminent Danger **(ECF No. 15)** be **STRICKEN** as violative of Rules 18 & 20 of the Federal Rules of Civil Procedure. Finally, Plaintiff's Motion to Compel Service and Notice of Change of Address **(ECF No. 33)** and Defendant Casteel's Motion for Order for Relief from Court's Order **(ECF No. 36)** be **DENIED as moot**.

Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by **July 10, 2015.** Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation **DISPOSES OF ALL ISSUES** referred to the undersigned magistrate judge in this matter.

**ENTERED** on June 23, 2015.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE