IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| FRANKLIN C. SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-14-1374-HE |
| RAE HOWELL, et al., | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. United States District Judge Joe Heaton referred this matter to the undersigned magistrate judge for preliminary review, conducting any necessary hearings, including evidentiary hearings, the entry of appropriate orders as to non-dispositive matters, and the preparation and submission of proposed findings and recommendations as to dispositive matters referenced in 28 U.S.C. § 636(b)(1)(B) and (C). Before the Court is Plaintiff's "Motion to Appoint Representative to Protect Incompetent Person Pursuant to Rule:17 (Supplemental Pleading)." (ECF No. 66). As more fully set forth herein, the undersigned recommends this action be **STAYED until February 1, 2016** and the pending Motion be revisited at that time.

**I. BACKGROUND**

1. At the time Plaintiff initially filed this lawsuit, he was confined in the Payne County Jail in Stillwater, Oklahoma. (ECF No. 1:1).

2. He named five Defendants: Rae Howell, a nurse at Stillwater Medical Center; Lloyd Moore, a physician at Stillwater Medical Center; Michael Casteel, a police officer

for the Stillwater Police Department; Lynn Hermanson, Payne County Assistant District Attorney; and Judge Kathy Thomas, Payne County District Court Judge. (ECF No. 1:1-3). His Complaint asserted various claims and allegations against each Defendant. (ECF No. 1).

3. On June 23, 2015, the undersigned issued a Report and Recommendation recommending that Plaintiff's claims, with the exception of Plaintiff's claim under the Americans with Disabilities Act ("ADA") against Defendant Casteel, be dismissed with prejudice, pursuant to 28 U.S.C. § 1915, for failure to state a claim upon which relief can be granted. (ECF No. 40).

4. With regard to the ADA claim against Defendant Casteel, the undersigned recommended it be dismissed with leave to amend. (ECF No. 40).

5. On August 14, 2015, the Court adopted the Report and Recommendation in its entirety and gave Plaintiff until August 28, 2015 to file an Amended Complaint pertaining solely to the ADA claim against Defendant Casteel. (ECF No. 57).

6. Though Plaintiff filed various documents following the Court's Order, he did not directly address his ADA claim against Defendant Casteel. Thus, on August 31, 2015, the undersigned issued a Report and Recommendation recommending that Plaintiff's ADA claim against Defendant Casteel be dismissed with prejudice. (ECF No. 61).

7. The Court adopted this Report and Recommendation on September 28, 2015, noting that the undersigned's previous Report and Recommendation had been returned as "not deliverable as addressed" but recognizing that *pro se* litigants are required by

the local rules to notify the Court when their mailing address changes. *See* LCvR5.4(a). "[P]apers sent by the court will be deemed delivered if sent to the last known address given to the court." *Id.* (ECF No. 63).

8. On October 23, 2015, Plaintiff filed a Motion to Appoint Representative to Protect Incompetent Person Pursuant to Rule:17 (Supplemental Pleading) ("Motion to Appoint"). (ECF No. 66).

9. In said Motion, Plaintiff alleged that he had been "found incompetent to proceed" in a criminal case pending in state court. (ECF No. 66:1). In support, Plaintiff attached a report, dated September 18, 2015, prepared by Forensic Psychologist Scott Orth, Psy.D., in response to an Order from Tulsa County District Judge William Musseman requesting that Dr. Orth examine Plaintiff and submit a report regarding Plaintiff's adjudicative competence. (ECF No. 66-1).

10. In the report, Dr. Orth indicated his opinion that Plaintiff is able to appreciate the nature of the charges made against him but unable to consult with and rationally assist his attorney in the preparation of his defense. (ECF No. 66-1:4).

11. As a result of Plaintiff's Motion to Appoint (ECF No. 66), United States District Judge Joe Heaton reopened the present case and referred the Motion to the undersigned "for his consideration of plaintiff's motions and the impact, if any, of [Plaintiff's Motion to Appoint] on the prior rulings in this case." (ECF No. 68).

12. Oklahoma State Court Network (OSCN) reveals that Plaintiff currently has several pending criminal cases in the Tulsa County District Court. In three pending

criminal cases, Case Nos. CF-2015-2539, CF-2015-2649, CF-2015-2692, the trial court held a competency hearing on August 6, 2015 and found Plaintiff competent.[1]

13. In Case No. CF-2014-3749, the trial court held a competency hearing on September 28, 2015 and based at least partially on Dr. Orth's report, found Plaintiff was not competent and ordered Plaintiff to be transported to the Oklahoma Forensic Center located in Vinita, Oklahoma for treatment. *See* OSCN, http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&cmid=2754831&number=CF-2014-3749. A Post-Evaluation Competency Hearing is currently scheduled in that case for January 18, 2016. *Id.*

14. In the present matter, Plaintiff filed a Notice of Change of Address indicating that he was at the Oklahoma Forensic Center receiving treatment at least as early as November 4, 2015. (ECF No. 70).

## II. ANALYSIS

### A. Effect of Plaintiff's Competency on Previous Rulings

#### 1. Claims Dismissed With Prejudice

On June 23, 2015, the undersigned issued a Report and Recommendation ("R&R") in which he recommended summary dismissal with prejudice of the following claims: (1) a Fifth Amendment claim against Defendant Casteel; (2) Eighth Amendment

---

[1] *See* OSCN,
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&cmid=2839239&number=CF-2015-2539,
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&cmid=2840699&number=CF-2015-2649,
http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&cmid=2841431&number=CF-2015-2692.

claims and state law claims of negligence against Defendants Howell and Moore, a doctor and nurse respectively at Stillwater Medical Center; (3) a Fourteenth Amendment claim based on malicious prosecution against Defendant Hermanson, an Assistant District Attorney; (4) and, a Fourteenth Amendment claim based on malicious prosecution and an ADA claim against Defendant Judge Thomas. As discussed below, Plaintiff's competency status does not affect these rulings as each of these claims failed as a matter of law.[2]

Plaintiff's Fifth Amendment claim against Defendant Casteel was based on his allegation that Defendant Casteel failed to read Plaintiff's *Miranda* rights. (ECF No. 40:6). As explained in the R&R, even if this is true, it is not a valid basis for civil liability under § 1983. (ECF No. 40:6-7) (citing *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976)).

Similarly, Plaintiff's § 1983 claims against Defendants Howell and Moore also fail as a matter of law. The only proper defendants in a § 1983 action are state actors. *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995). As medical employees at a local hospital, neither of these Defendants are state actors for § 1983 purposes. Further, Plaintiff's allegations that these Defendants initially called the police, leading to Plaintiff's arrest, and also testified at his preliminary hearing on behalf of the prosecution cannot provide the basis for a valid claim for civil liability. (ECF No. 40:11-13) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009)

---

[2] The undersigned will address each claim to the extent necessary to explain why Plaintiff's competency does not affect dismissal of the same. A more detailed analysis of the legal authority supporting the basis for dismissal is set forth in the initial R&R. (ECF No. 40).

("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law."); *How v. City of Baxter Springs*, 217 F. App'x 787, 793 (10th Cir. 2007) ("[A]bsent more, causing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action)). Additionally, Plaintiff's ADA claims against Defendants Howell and Moore also fail as a matter of law because the Tenth Circuit has held the ADA does not provide remedies for alleged medical negligence or malpractice. (ECF No. 40:13-14) (citing *Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005)). Clearly, Plaintiff's state of competency has no impact on the viability of his claims against these Defendants.

The same is true for Plaintiff's constitutional claims of malicious prosecution against Defendant Hermanson, the Assistant District Attorney who prosecuted the criminal charges resulting from Plaintiff's behavior at Stillwater Medical Center. Prosecutorial immunity provides absolute immunity against claims based on a prosecutor's conduct in preparation for and during trial. (ECF No. 40:14-15) (citing *Douglas v. Miller*, 864 F.Supp.2d 1205, 1214 (W.D. Okla. 2012)). Similarly, any claim Plaintiff asserts against Defendant Judge Thomas, who presided over his criminal trial, is barred by judicial immunity. (ECF No. 15-17) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Malipuratho v. Jones*, No. CIV-11-646-W, 2012 WL 3823544, at *7

(W.D.Okla. June 22, 2012)). Again, Plaintiff's competency has no impact on the viability of these claims.[3]

### 2. Claim Dismissed With Leave to Amend

The remaining cause of action is Plaintiff's ADA claim against Defendant Casteel. Construing Plaintiff's Complaint liberally, it appears he contends that Defendant Casteel violated the ADA by arresting him based on unlawful behavior that was allegedly the result of a mental disability.[4] However, if indeed this is Plaintiff's theory of liability, his claim fails as a matter of law.

The Tenth Circuit has indicated that an ADA claim *may* stand where a law enforcement officer arrests a disabled individual *who has not committed a crime* but instead the officer misperceives the effects the individual's disability as illegal conduct. *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999). For example, "In *Lewis*, [officers] beat and arrested, for the offense of resisting law enforcement, a deaf man who could not understand their command; in *Jackson*, [officers] arrested for drunk

---

[3] Plaintiff also asserted state law claims based on medical malpractice and/or negligence. The undersigned recommended the Court decline to extend supplemental jurisdiction over said claims in light of the recommended disposition as to Plaintiff's federal claims, and the Court agreed. (ECF No. 40, 63). Plaintiff's competency status likewise does not affect the jurisdictional basis of that ruling.

[4] According to the Probable Cause Affidavit Plaintiff submitted with his Complaint, Defendant Howell reported to Defendant Casteel that Plaintiff had arrived seeking mental treatment, became unruly and they left the door to his room open to allow for observation because Plaintiff kept pulling at his IV, taking off his blood pressure cuff, pulling at the cords connected to nearby monitors and trying to get out of bed. (ECF No. 1-2:1). Plaintiff then pulled his pants down around his knees and began masturbating in front of the open door, with a child in the room across the hall. (ECF No. 1-2:1). Defendant Casteel was overwhelmed by the smell of alcohol coming from Plaintiff, noted slurred speech and watery eyes but also noted Plaintiff was conscious and aware of where he was and what was happening around him. (ECF No. 1-2:1). Defendant Casteel placed Plaintiff under arrest for Indecent Exposure and Public Intoxication. (ECF No. 1-2:1). In his Complaint and subsequent filings, Plaintiff neither acknowledged nor denied this behavior.

driving a man who was sober, and whose unsteadiness and slurred speech resulted from a past stroke." *Id.* (citing *Lewis v. Truitt*, 960 F.Supp. 175,176–77 (S.D. Ind. 1997); *Jackson v. Town of Sanford, Civ. No. 94-12-P-H*, 1994 WL 589617, at *1 (D. Me. Sept. 23, 1994)). In each of those cases, the arrestee had not actually committed a crime but the effects of his disability were mistaken for criminal behavior by the subject officers.

By contrast, in *Gohier*, the Tenth Circuit ruled that an ADA claim could not stand where an officer used deadly force against a man, later identified as a paranoid schizophrenic, when the man charged the officer while making a stabbing motion with a long slender object. *Gohier*, 186 F.3d at 1221. The Tenth Circuit concluded that regardless of whether the behavior was the result of his mental disability, his conduct was unlawful and warranted a police response. *Id.*

In the initial R&R in this case, the undersigned recommended Plaintiff's ADA claim be dismissed for the same reasons the Tenth Circuit rejected an ADA claim in *Gohier*. (ECF No. 40:10-11). Regardless of whether Plaintiff's behavior was the result of a mental disability, Plaintiff's alleged conduct was unlawful and warranted a police response. (ECF No. 40:10-11). In that situation, civil liability under the ADA does not lie against Defendant Casteel. (ECF No. 40:10-11).

Based on the Probable Cause Affidavit, the undersigned is skeptical Plaintiff can present a viable ADA claim against Defendant Casteel. However, because Plaintiff neither acknowledged nor denied the behavior alleged in the Probable Cause Affidavit, the undersigned recommended dismissing this claim with leave to amend. Plaintiff was

8

ultimately given until August 28, 2015 to do so and when he did not, his claim was dismissed. (ECF Nos. 57, 61, 66).

The remaining questions before the Court then are whether Plaintiff's competency status might have affected his ability to amend his ADA claim by August 28, 2015 and if so, whether the Court should appoint a guardian *ad litem* under Rule 17(c). In light of state court records indicating Plaintiff was found competent as late as August 6, 2015, it is unlikely his competency hindered his ability to amend his ADA claim within the requisite time period. However, out of an abundance of caution due to the finding of incompetency in late September 2015, the undersigned recommends Plaintiff be provided an additional opportunity to amend his ADA claim. The remaining question regarding whether the appointment of a guardian ad litem under Rule 17(c) is warranted is addressed below.

### B. Plaintiff's Request for a Guardian *Ad Litem*

Federal Rule of Civil Procedure 17(c) provides, in relevant part, that "[t]he court must appoint a guardian ad litem---or issue another appropriate order---to protect . . . [an] incompetent person who is unrepresented in an action." Relying on Dr. Orth's report, Plaintiff contends that he is "an incompetent person" within the meaning of Rule 17(c) and requests the appointment of a guardian ad litem. It is important to note that Rule 17(c) does not mandate the appointment of a guardian ad litem so long as an incompetent person's interests are adequately protected. *See T\_\_\_ H\_\_\_ v. Jones*, 425 F.Supp. 873, 876 (D. Utah 1975) ("Neither the appointment of a guardian ad litem nor

a protective order in lieu of such appointment is mandatory so long as we determine that the plaintiff is adequately protected....").

The exact nature of the state court's ruling of incompetency is critical to the current analysis. Dr. Orth concluded Plaintiff is able to appreciate the nature of the charges against him. (ECF No. 66-1:4).

> Mr. Smith demonstrates that he is aware of his current legal situation, behaviorally defining and detailing it, including awareness of his pending charges …. Mr. [Smith] is aware of the potential penalty of a possible conviction, as well as alternative outcomes of possible conviction or acquittal. Lastly, Mr. [Smith] demonstrates an appreciation of the severity of his current legal situation and he evidences motivation to obtain a favorable outcome as perceived by him.

(ECF No. 66-1:4).[5] Dr. Orth noted that Plaintiff does not suffer from any cognitive impairment, however while his thoughts are coherent and goal-directed, "they evidence persecutory delusions (beliefs that one is being conspired against, followed, maliciously maligned, harassed or obstructed), which he intricately intertwines into his current legal situation." (ECF No. 66-1:3, 4). Dr. Orth concluded that Plaintiff's current mental state renders him "unable to engage in or assist his attorney in such tasks as communicating relevant facts, evaluating possible plea options, challenging witnesses, and planning a legal strategy." (ECF No. 66-1:4). However, Dr. Orth also stated that if provided with a course of treatment, therapy or training, Plaintiff "will likely be stabilized so that his current mental status would no longer interfere with his competency related abilities." (ECF No. 66-1:4).

---

[5] Dr. Orth consistently refers to Mr. Smith by the wrong last name using "Springwater," instead. The undersigned presumes this was merely a typographical error.

There is a dearth of case law within the Tenth Circuit regarding Rule 17(c) and the applicable standards and procedures when it is implicated. However, the Ninth Circuit recently addressed a situation strikingly similar to that presented here. In *Davis v. Walker*, 745 F.3d 1303 (9th Cir. 2014), a plaintiff had two lawsuits pending in which he had asserted claims under 42 U.S.C. § 1983, as well as a habeas corpus proceeding in a separate federal district court. *Id.* at 1305-07. In his § 1983 actions, the plaintiff requested the appointment of a guardian ad litem and in support, submitted a prison psychiatrist's declaration indicating that he had diagnosed the plaintiff with schizoaffective disorder, impulse control disorder, substance-related mental disorder with a history of hallucinations, delusions, and mood episodes, including mania, and stated that the plaintiff posed a danger to himself. *Id.* at 1306. The plaintiff also submitted evidence that he had been under court-ordered long-term involuntary psychotropic medication. *Id.* at 1306-07.

While the plaintiff's § 1983 actions and his request for a guardian ad litem were pending, he was found incompetent in his habeas proceeding and the court in that action appointed a guardian ad litem. *Id.* at 1307. In his § 1983 cases, the judge noted that under Rule 17(c), the court was not required to appoint a guardian "if it found that [the plaintiff's] interests were adequately protected." *Id.* The court had previously attempted to appoint one but had been "advised by the ADR and Pro Bono coordinator [] that there is no individual available to serve as guardian ad litem for plaintiff." *Id.* Based on this, the magistrate judge recommended denial of the plaintiff's motion, concluding that "'the most appropriate available measure' to adequately protect [the

plaintiff] was 'to stay the cases until any party thereto provides evidence that plaintiff has been restored to competency and is capable of protecting his own interests through self-representation.'" *Id.* The district judge adopted the recommendation, finding, "Rule 17(c) required the court to either appoint a guardian ad litem or issue another appropriate order, and '[t]he present order staying the above-captioned matters is such an appropriate order.'" *Id.* The district court then administratively closed the plaintiff's cases, which removed them from the court's active docket. *Id.* The plaintiff appealed this ruling to the Ninth Circuit.

On appeal, the Ninth Circuit noted that the purpose of Rule 17(c) is to protect an incompetent person's interests in prosecuting or defending a lawsuit.

> Once the court determines that a *pro se* litigant is incompetent, the court generally should appoint a guardian ad litem under Rule 17(c). But the Rule does not make such an appointment mandatory. If another order would sufficiently protect the incompetent person's interests in the litigation in lieu of a guardian, the court may enter such an order.

*Id.* at 1310 (citing *United States v. 30.64 Acres of Land, More or Less,* 795 F.2d 796, 805 (9th Cir.1986); *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984)). *See also Jones*, 425 F.Supp. at 876 (same). Relying on the record indicating that, unlike Plaintiff in the present case, the plaintiff was not likely to ever regain competency, the appellate court held that, contrary to Rule 17(c)'s mandate that the court protect an incompetent person who is unrepresented, the district court's order to stay the case "left his interests in the litigation completely unprotected and functionally operated as a dismissal." *Id.* at 1311.

12

> [The plaintiff's] long history of mental illness and numerous involuntary medication orders, combined with Dr. White's psychiatric report and the federal habeas court's finding of incompetency, were sufficient to put the district court on notice that Davis is incompetent and that *he shows no signs of regaining competency in the future.* Even if [the plaintiff] were one day restored to competency such that he could represent himself pro se, his ability to litigate his § 1983 actions would be substantially prejudiced through delay, as witnesses' memories fade and evidence becomes stale. *See Blue Cross*, 490 F.3d at 724. Instead of satisfying the obligation created by Rule 17(c) to ensure that [the plaintiff's] interests in the litigation would be adequately protected, the district court closed the courthouse doors, aware of the strong probability that [the plaintiff] would not soon return.

*Id.* (emphasis provided).

The appellate court was sympathetic to the district court's limited supply of individuals willing to represent clients like the plaintiff before them but suggested other avenues for finding such individuals. *Id.* The appellate court also explained, "If the court determined that a stay order was still an appropriate solution, the court might have engaged in periodic case management conferences to reassess [the plaintiff's] competency or monitor his search for a guardian." *Id.*

Under the circumstances presented in this case, the undersigned concludes that staying the present matter until February 1, 2016 will protect Plaintiff's interest. In direct contrast to *Davis*, the psychologist's report Plaintiff submitted with his request for a guardian ad litem specifically states that Plaintiff is aware of, appreciates and understands his legal situation and Dr. Orth opined that he should be able to return to competency with treatment. (ECF No. 66-1:4). Plaintiff is currently receiving said treatment at Oklahoma Forensics Center and a Post-Evaluation Competency Hearing is already scheduled for January 2016. (ECF No. 66-1:4; ECF No. 70; OSCN,

http://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&cmid=2754831&number=CF-2014-3749). Thus, based on the record in this case, a temporary stay of these proceedings does not amount to a dismissal of Plaintiff's claims.

Further, as the only remaining issue currently before the Court is whether Plaintiff can present a viable ADA claim, the limited nature of the proceedings also weighs in favor of temporarily staying the case. Similar to the suggested alternative in *Davis*, the Court should order a temporary stay of this matter while Plaintiff undergoes treatment for his mental disability. This recommendation adequately protects Plaintiff's interests by allowing him the opportunity to regain competency while only staying the case for a short time period and keeping the matter on the Court's active docket. Accordingly, the undersigned recommends the Court order Plaintiff to update the Court within seven (7) days of his state court Post-Evaluation Competency Hearing as to the result of the same. If Plaintiff has not notified the Court by February 1, 2016, the undersigned can review the status of the state court docket and decide at that time whether to recommend removal of the stay or otherwise rule on Plaintiff's Motion to Appoint.

### III. MISCELLANEOUS MATTERS

On October 28, 2015, Plaintiff filed a document entitled, "Plaintiff is Presenting New and Strong Convincing Prima Facie Evidence That He Was Wrongfully Placed in Solitary Confinement in Reprisal." (ECF No. 67). In this filing, and though he does not name any particular parties, Plaintiff essentially attempts to assert claims related to the conditions of his confinement presumably while confined in Tulsa County Jail. Such

claims are completely separate and apart from those claims asserted in his original Complaint. Indeed, his confinement in Tulsa County Jail appears to be the result of criminal charges unrelated to those for which Defendant Casteel placed him under arrest. Plaintiff previously attempted to assert similar claims in an Amended Complaint, which was stricken by the Court. (ECF Nos. 15, 40, 57). As explained below, his latest filing should be stricken for similar reasons.

Fed. R. Civ. P. 15(a) provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party." Although Rule 15 mandates that leave to amend is to be "freely given when justice so requires," *Forman v. Davis*, 371 U.S. 178, 812 (1962), in the context of litigation initiated by a prisoner in federal court, proposed amendments to the complaint must also be viewed in light of the restrictions imposed by 28 U.S.C. § 1915 as amended by the Prison Litigation Reform Act ("PLRA") in 1996. The PLRA restrictions include, but are not limited to, full payment of the filing fee in any civil action or appeal submitted by a prisoner through partial payments over time as authorized by statute, *see* 28 U.S.C. § 1915(b)(1) and (2), and a "three strike" provision which prevents a prisoner from proceeding *in forma pauperis* if the prisoner's litigation in federal court includes three or more cases dismissed as frivolous, malicious, or as stating no claim for relief. *See* 28 U.S.C. § 1915(g).

Further, the Federal Rules of Civil Procedure discourage a complaint alleging multiple unrelated claims against multiple parties except in limited circumstances. Fed. R. Civ. P. 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

In other words, a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question. While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.,* 160 F.Supp.2d 1210, 1225 (D.Kan. 2001) (internal citation omitted). Where there is misjoinder of parties, the Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

Additionally, Fed. R. Civ. P. 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party." Under "the controlling principle" in Fed. R. Civ. P. 18(a), "[u]nrelated claims against different defendants belong in different suits." *Id.* (quoting *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007)). Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.*

Based on these principles, the undersigned concludes Plaintiff's attempt to assert new claims based on conditions of confinement violates Fed. R. Civ. P. 20(a)(2) because it would inevitably add new defendants not shown to be connected to his initial claims by a common occurrence or question of fact or law. The undersigned also concludes it would violate Fed. R. Civ. P. 18(a) because it would add claims not related to those already raised herein. To permit Plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in separate action(s) would allow him to avoid paying the filing fees required for separate actions, and could also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be a "strike" under 28 U.S.C. § 1915(g). Thus, the undersigned recommends Plaintiff's document filed as ECF No. 67 should be stricken as violative of Fed. R. Civ. P. 18 and 20.

### IV. RECOMMENDATION

In light of the foregoing discussion, it is hereby recommended the Court enter a temporary **STAY** in this matter. Further, the undersigned recommends the Court order Plaintiff to notify the Court within seven (7) days of his state court Post-Evaluation Competency Hearing as to its result. Following such notification or, alternatively, if Plaintiff has not so notified the Court by February 1, 2016, the undersigned will review the state court docket and issue a Report and Recommendation regarding whether the stay should be lifted or otherwise recommend a ruling on Plaintiff's "Motion to Appoint Representative to Protect Incompetent Person Pursuant to Rule:17 (Supplemental Pleading)." (ECF No. 66).

It is further recommended that Plaintiff's filing entitled, "Plaintiff is Presenting New and Strong Convincing Prima Facie Evidence that He Was Wrongfully Placed in Solitary Confinement in Reprisal." **(ECF No. 67)** be **STRICKEN** as violative of Rules 18 & 20 of the Federal Rules of Civil Procedure.

Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by **December 11, 2015**. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation does not dispose of all issues currently referred to the undersigned magistrate judge in the captioned matter.

**ENTERED** on November 24, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE